The third and final argument this morning is in Appeal No. 05-1454, Catalyst & Chemical v. Global Ground. The summary judgment of non-infringement in this case should be reversed because the judge below misconstrued the claim. Specifically, he relied upon the word as that appears toward the end of the claim to require that the de-icing and anti-icing steps occur simultaneously. Well, I thought he said they have to overlap. That's not quite the same as being simultaneous start to finish. It is not quite the same, but your honor, he also used the word simultaneously in his ruling. I thought his essential construction was that the de-icing has to still be going on at the time that the preventative step begins. That's why I'm calling it overlap. Correct, your honor. But he also used the word simultaneously in his opinion to describe that overlap. So I'm not trying to force the worst case on the trial judge's construction. I'm merely using his own words. Why is he wrong? Okay, he's wrong because that focus on the word as contradicts the plain and ordinary meaning of that word. And when the applicants here wanted to convey the thought of simultaneity in their claim, they knew how to do so expressly, and they did so. What are you suggesting the correct interpretation of the word as in this claim phrase would be? Yes, I'm suggesting, as we say in the brief, that it is that the two acts occur at least near one another in time. How does that meet the word as? Because that is the common ordinary meaning of the word as. Yes, well let me go through several examples from ordinary speech. You could say, for instance, the parent picked up the toys as the child dropped them. That doesn't mean that there's overlap between the two. There could be overlap in time between the two, but not necessarily. That's casual conversation. This is claim drafting, an art form, an integrated legal instrument, a formal grant of exclusive powers by an agency of the United States government. This is a little bit of a different setting than casual oral conversation. And the words in patent claims are intended to have important meanings, to define the zone of technology that's protected by the patent in order to both inform the patentee where he can kick everybody else out and inform all the competitors of where they can freely tread. It's very important what these words mean. Oh, I'm not saying that it's not important, Your Honor. What I'm saying is the words should be construed according to their common and ordinary meaning. Common and ordinary meaning in patents like this or in conversations between parents and children? Well, let me give another example, Your Honor. You could say, for instance, that as the lawyer spoke to the judges, he drank a glass of water. So you have in that instance— Do you think that would apply? I can certainly see how that would apply if in the course of your argument you drank a glass of water. However, if you sat down and during your opposing counsel's argument you had a glass of water, I wouldn't think you would use the word as. Even in the colloquial sense. I agree, Your Honor. And that's why I say that the two acts have to be very close in time to one another. And that's what we had here with the accused system. The so-called shotgun over-under apparatus used by the defendants here permitted the user to use the top de-icing spray and then stop that and immediately follow with the anti-icing spray. So you— I'm sorry. No, please, go ahead. What I'm saying is I think in the circumstance you describe, yes, as would not be appropriate. But in the circumstance where one immediately follows the other, where they're so close in time— —that the defendant used this rapid alternation between the one chemical and the other, the one pressure and the other, in actuality. Because this is a method claim. The fact that they could do it doesn't create infringement. You have to prove that they did do it. That is, they did do this rapid alternation back and forth between the two different chemicals for the two different purposes. Well, I believe they talked about that in their advertising, Your Honor. No, no, no, no, no. You have to prove that out at the airport they did it. They either performed the method or they didn't. They can advertise all they want about what they might do or can do. That has nothing to do with what they did. Infringement is a historical fact. They either did practice every step of the method or they didn't. Your burden is to prove it. Where is the proof that they ever practiced the method in the manner of what I'm calling rapid alternation? There is a videotape, Your Honor, that they used as advertising, and that showed conversion from one mode to the other. Back and forth, back and forth, rapidly? I think it was just one to the other. That's what I think, too, which is quite different. Your argument only works if they're going back and forth, back and forth, back and forth. No, Your Honor, that's not true because the claim recites application of de-icing fluid and then application of anti-icing fluid. So there's no back and forth. Yeah, but they aren't simultaneous. Okay, well, let me proceed then to the prosecution history because that was another basis. Well, before you get to the prosecution history, there is a portion of the specification that seems to me is problematical for you. I'm sure you're familiar with it. It's column 7 and between 50 and 60 where you mentioned the judge having picked up the word simultaneously. The specification uses that precise word. Yes. Simultaneously capable of de-icing and anti-icing suggests that the term as is being used in the sense of the term file. Your Honor, that… The other reference, of course, is concurrently is the other adverb that's used, which again suggests contemporaneity, direct contemporaneity, at least overlaps. Well, first of all, the passage that you refer to is one raised for the first time here on appeal. Well, it's in the specification. I understand, Your Honor. We wouldn't need to have a party to point it out with. If you notice, this passage is saying simultaneously capable of de-icing and anti-icing and or cleaning and rinsing both the underside and the topside. When the patent uses the expression simultaneously, it does so in the context of talking about the upper side and the lower side. I might give some credence to that argument if I didn't read the next sentence, which refers to the invention. The present invention concurrently delivers respective fluid pressure mixtures for de-icing and anti-icing, which seems to be directly on the question of contemporaneity.  The word, though, concurrently in the dictionary does mean either contemporaneously or side-by-side. How does that help me? Well, these two operations are done side-by-side, not overlapping temporarily in time. Well, concurrently as opposed to consecutive. Correctly, Your Honor. And we also have… If the accused device would be fairly characterized as engaging in consecutive de-icing and anti-icing, then it's not concurrent, right? I think it would be concurrent, according to the dictionary. Well, I thought we just… Well, concurrent is… I thought concurrent and consecutive were different. They were anonyms, really. They're not anonyms. They're different in that they're different words and they have different meaning, but they have overlap in meaning, too. They cover the same type of close activity. Now, on the question of temporality here, what is… in the written description is the perspective of the skilled artisan in designing these kinds of systems. To talk about what a parent might say to a child or to talk about what a general-purpose dictionary says I think has almost nothing to do with the right mode of analysis of technical language in a patent claim. Your Honor, I would agree with you if we were talking about a technical term. But the entire patent is technical. But it is composed of words that have common and ordinary meaning that don't have… And there's been no allegation in this case that the word as has a special meaning in this technology. That's not my point. My point is that construing the word as has to be done in light of what the entire patent document says as read by an ordinary artisan, not by my mother-in-law. I agree with that, Your Honor. But there's no reason to think, there's nothing in the record to think that the word as, even in this context, has a different meaning from the skilled artisan than it would from an ordinary person. Well, that's your view. Well, let me address the point of temporality. You know, what does it mean to be the same time? In this particular case, the skilled artisan would look at this specification, in fact, as the examiner did, and say the temporality is a single pass. It's true that the word simultaneously does occur in Column 7. But the notion of a single pass, the airplane moving past the apparatus just once to both de-ice and anti-ice is pervasive in this patent. It comes up in the very first sentence in the abstract. And before the examiner would allow the case, he required that it be put into the claim. And I would very much like, Your Honor, to talk about the prosecution history. Because I think that is the reason that the trial judge here went off base. In his decision at A35 of the appendix, he says, Therefore, in order to avoid the prior art process patented by Thornton Trump, the patent officer and the patentee agreed to add language to show that for a portion of the process, steps 2 and 3 occur simultaneously. This is not true at all, Your Honor. In fact, the arguments made by the applicants appear at A240. There they said that their invention is distinguishable from Thornton Trump because the reference failed to disclose the presence of glycol in the anti-icing step. That it used only water in the anti-icing step. And further, that Thornton Trump failed to disclose the step of collecting both the de-icing and the anti-icing substances in the one pass. Now, this proceeds, Your Honor, if you go through the various interview summaries, there's never a mention of simultaneity or overlap in time. No fixation on the word as. And, for instance, in the summary of the July 30, 1991 interview, the examiner stated, Further claim language added to show that the aircraft will be de-iced and anti-iced in the two-step single pass operation. So, again, the simultaneity that's being talked about here is that we are going to both de-ice and anti-ice in the course of a single relative pass. And I think it's very important to look at the notice of allowance where the examiner made the amendment that's relied upon by the trial court to find this temporal overlap. And the judge, as I say, relied on this, and the examiner added the language that appears toward the very end of the claim. He says, Where in the aircraft is progressively de-iced and anti-iced in one pass of the aircraft relative to the apparatus. It has nothing to do with the word as. I notice here, really for the first time at this moment, that the word simultaneously does appear just above in something the examiner has added to the claim. But that is simultaneously as used to indicate that the forced air and the glycol mixture exit the nozzle at the same time. So perhaps that is where the examiner went wrong on this argument. Do you want to save any of your time? I do, Your Honor. Thank you for reminding me. I will do that now. Thank you, Mr. James. Mr. Gordon. May it please the court. The issue here is really very straightforward. The patent claim, Claim 25, was of course drafted by the appellant. He chose what language to use there. And he chose to use, in defining his invention, the language that the anti-icing would be accomplished as de-icing continues to be accomplished. Now, if that was the only mention in the patent, we think it would be clear enough just based on common language, notwithstanding what Mr. Daniels has suggested. But if there's any question, you look to the rest of the patent to see what construction is being given. And the place that you would look first is, as Judge Bryson has pointed out, the summary of the invention that is provided. And this appears at page 84 of the joint appendix in column 7, where it is said that it is an object of the invention to provide an apparatus and method that is simultaneously capable of de-icing and anti-icing. And then in the very next paragraph, it says the apparatus and method of the present invention concurrently delivers respective fluid pressure mixtures for de-icing and anti-icing. Is it your contention that to violate, to infringe this patent, one would have to have two separate nozzle means, one spraying de-icing and pressurized air and the other spraying the anti-icing chemical and pressurized air? Yes, Your Honor. I believe that that's clear throughout the patent. And the accused device only has a single nozzle means, a single emission of the combination of air and a chemical, one chemical. That's correct, Your Honor. And if I may, just to follow up in terms of the interpretation, the other thing that you would look to resubmit and which the district court did look to are the illustrations that are provided. And the district court set those out. If you take a look at page 34 of the appendix, the district court reproduced their figures 4B through 4E of the patent. If you want to see bigger pictures of the same thing, you could also look alternatively at pages 57 through 6. The problem with that is typically the figures are expressly indicated to be a depiction of the preferred embodiment. And we have, I believe, a significant number of cases that say that it's rare that the broadest claim of a patent, there's only one claim in issue, of course, is limited to precisely what is shown in preferred embodiment figures and nothing more. That would be a very unusual path. Well, Your Honor, if we were relying on the drawings here for our interpretation, then I would agree with you. I think we're down to a third level of support for the language that's been used. And I'm not trying to make the figure bear more than it's worth. But if I may, I think that the case is clearly already over in the sense that Judge Kennedy was very careful and correctly construed this. But there were two further arguments that we made that Judge Kennedy didn't even reach. And one of them is utterly fundamental to the way the respective inventions here work. And that is that the patent that Mr. Gaughan had talks about the stationary apparatus through which the aircraft moves. And the quoted language is in Claim 25. And we quote this in the footnote at page 14 of our brief. So the whole point of his invention is that the plane is towed through his stationary apparatus. And in this one pass that you've heard so much about, it is first de-iced and second anti-iced. The invention that Global uses is precisely the contrary. The plane is parked and stationary throughout. And you have this cab with a single nozzle at the end of what is effectively a giant mechanical arm that can go up and down and side to side and turret around. And that moves up and down the length of the plane to accomplish the de-icing. Now it's as different as black and white. So the patent infringement claim here is not even close. And I think that it's no coincidence that it took two years after this case was filed before the patent infringement claim was added. The case was originally filed in February of 2002. And plaintiffs didn't get around to adding a patent infringement claim until January of 2004. So this claim was originally a trade secret claim, which, of course, the jury rejected. Breach of contract claim, the jury rejected. And a repo claim that the court threw out early in the process. What was the predicate for the repo? Nail fraud, wire fraud? Yeah, the contractual breaches, yeah. Contractual breaches converted into the patent access, nail fraud, and wire fraud. Exactly. All right. Thank you. Mr. Daniels, rebuttal. Thank you, Your Honor. On a point raised earlier of what one skilled in the art would interpret the word as to mean, we certainly had people skilled in the art in this case. We had very sophisticated engineers on both sides. And yet neither party, although this case was heavily fought at the summary judgment stage, neither party identified the word as as indicating temporal simultaneity. And I'm not saying, Your Honor, that the defendant is precluded from relying on this argument created by the judge or the judge is precluded from making this argument. What I am saying is that certainly people skilled in the art looked very carefully at this patent for some long time and never heard anybody. I shouldn't pick on you, but I find it astounding for many attorneys to stand at the podium and talk about the, quote, argument made by the trial judge. Trial judges don't make arguments. Advocates make arguments. Trial judges and appellate judges make decisions based on rationale. They don't make arguments. The arguments are over when they decide a case, especially with language. But lawyers really should be more careful. Okay. My point is that people skilled in the art looked at the word as, and it never occurred to them that there was a requirement in the claim for temporal overlap. The court asked Pelley's counsel about the number of nozzles. Would it require at least two nozzles then to infringe this claim? Two nozzle means, I think, was the court's precise wording. And counsel said yes. Well, there's only one nozzle means recited in the claim. And so according to, I just can't understand the appellee's argument if that is part of the basis for it when it expressly contradicts the claim. And as to Column 7, let me just point out that it is a stated object of the invention, one of quite a few stated objects of the invention. It doesn't say the invention is the simultaneous application of de-icing, anti-icing treatment. It says this is one of the objects of the invention. And I think the case law of this court is that an object of the invention, among many objects, shouldn't be incorporated into the claim as a limitation. Are you saying that the patent specifies that the invention it recites, it only has one nozzle? It has one. The claim itself recites a nozzle means. No, no. It says an apparatus including respective nozzle means. That suggests to me exactly the opposite, that it has two nozzle means, one for spraying each of the two different types of chemicals. Yes, Your Honor. I stand corrected. I apologize. You're correct. But that, in the accused product, we had two nozzle means. You had two nozzles, but they constitute a single nozzle means, because one blows air and the other blows liquid chemicals. And that's just the way it is in our claim. One blows forced air, and the second one blows a fluid mixture. And what's the second part of the first one? Your Honor, one, in the accused apparatus, one nozzle blows forced air, one nozzle blows the anti-icing fluid. And that's what we have in our claim. All right. I think we have the arguments clearly in line. We thank both counsel.  Thank you, Your Honor.